**William J. ROCK, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 6, 2010.

Decided Oct. 19, 2010.

William J. Rock, petitioner, pro se.

Paul R. Jordan, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

William J. Rock (Claimant) petitions, pro se, for review of the October 1, 2009 order of the Unemployment Compensation

Board of Review (UCBR) affirming the Referee's decision denying him emergency unemployment compensation (EUC) benefits pursuant to Sections 4(x) and 403–A(i) of the Unemployment Compensation Law (Law),[1] and the Emergency Unemployment Act of 2008 (EUC Act of 2008).[2] The issues before this Court are: (1) whether the UCBR erred in its definition of remuneration and misapplied Section 4(x) of the Law; (2) whether the UCBR erred by including moving expense account monies when determining the wages attributable to the Claimant; and, (3) whether the UCBR penalized the Claimant for failure on the part of SPX Corporation (Employer) to properly apply the moving expense account provisions of the Internal Revenue Service (IRS) Code, and incorrectly treated expense reimbursement as income. For the following reasons, we vacate the order on appeal and remand this case to the UCBR.

In July of 2007, Claimant was hired by Employer as a finance professional, and was relocated to Pennsylvania from Michigan. He was paid a salary from July through December of 2007 when, for reasons unclear on this record, Claimant's employment ceased. In April of 2008, Claimant applied for unemployment compensation benefits, thereby establishing a base year period consisting of the four quarters of 2007 (i.e., January 1, 2007 through December 31, 2007).[3] Claimant had no base year wages during the first two quarters of 2007, before he was hired by Employer. During the third quarter of 2007, Claimant received $89,908.19 from Employer, which included $72,254.34 for relocation expenses paid to Claimant during that time. During the fourth quarter of 2007, Claimant received $19,791.56 from Employer, $2,483.86 of which was for purposes of relocation. Accordingly, Claimant received a total of $109,699.75 during his base year from Employer. Based upon the base year wages reported by Employer, Claimant received a weekly benefit of $539.00 to a maximum allowance of $14,014.00.[4]

■ After exhausting his regular UC benefits in October of 2008, Claimant applied for EUC benefits. The Scranton UC Service Center issued multiple financial determinations, first denying EUC (October 16, 2008), then granting EUC (December 1, 2008), then ultimately denying EUC (December 3, 2008–revised). Claimant appealed and the Referee conducted a hearing on December 24, 2008, which was continued so that Claimant could present documentation to support his position. The continued hearing was held on March 30, 2009, but Claimant failed to appear. The Referee issued a decision denying Claimant benefits. Claimant appealed to the UCBR, which remanded the matter to the Referee to determine if Claimant had good cause for missing the March 30, 2009 hearing and, if so, to present evidence on the merits of his case. The Referee, acting as the UCBR's hearing examiner, conducted a hearing on June 30, 2009 at which Claim-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 753(x), 813(i), the latter was added by the Act of February 9, 1971, P.L. 1.

2. Title IV of the Supplemental Emergency Appropriations Act of 2008, P.L. 110–252, 122 Stat. 2323, Section 4001, 26 U.S.C. § 3304.

3. Section 4(a) of the Law, 43 P.S. § 753(a), defines "base year" as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year."

4. Claimant appears to have no issue with the fact that his regular UC benefits were based upon wages reported by Employer that included the relocation expense monies.

ant demonstrated what the UCBR deemed was good cause for missing the March hearing. Claimant also presented evidence of his wages and reimbursements from Employer during the time of his employment. The UCBR issued a decision on October 1, 2009 affirming the Referee's determination and denying Claimant EUC benefits on the basis that Claimant did not have wages that were at least equal to one and a half times his highest quarterly wage. Claimant appealed to this Court.[5]

■ On appeal, Claimant contends that he was paid wages in an amount that would make him eligible for EUC benefits. He argues that relocation/moving expenses are reimbursements as opposed to wages, and that the UCBR erred by including the relocation expense monies when calculating Claimant's wages for purposes of his EUC eligibility.

This Court has stated:

EUC benefits are federally funded and created pursuant to an act of Congress, specifically the [EUC Act of 2008]. The program is administered by the states. In Pennsylvania, a claimant seeking EUC benefits in Pennsylvania must meet the following requirements:

Unemployed claimants who are not eligible for regular UC from Pennsylvania, another state, the federal government or Canada may be eligible for EUC.

Eligibility requirements for receipt of regular UC are also applicable to

EUC. For example, a claimant must be at least partially unemployed, able and available for suitable work, not disqualified for voluntarily leaving work, and not discharged for willful misconduct.

A claimant must also meet the following:

● Had a regular UC claim with a benefit year that ended on or after May 1, 2007, OR currently have a regular UC claim on which the claimant received the maximum amount of benefits.

● Be legally authorized to work in the United States if the claimant is an alien.

● Have total base year wages that are equal to or greater than 1 1/2 times the amount of wages in the claimant's highest quarter of the base year.

*McKenna v. Unemployment Comp. Bd. of Review*, 981 A.2d 415, 417 (Pa.Cmwlth. 2009) (citing Pennsylvania Department of Labor and Industry website, www.dli.state. pa.us./landi/cwp/view.asp?a=152Q= 250855, EUC Frequently Asked Questions).[6]

Section 4001(d)(2)(A) of the EUC Act of 2008 provides:

(a) that an individual shall not be eligible for emergency unemployment compensation under this title unless, in the base period with respect to which the individual exhausted all rights to regular compensation under the State law, the individual had 20 weeks of full-time in-

---

5. "Our scope of review in unemployment compensation cases is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether findings of fact are supported by substantial evidence." *Lindsay v. Unemployment Comp. Bd. of Review*, 789 A.2d 385, 389 n. 4 (Pa.Cmwlth.2001).

6. Just as in the instant case, the claimant in *McKenna* applied for EUC benefits on April 6,

2008, had a base year that covered January 1 through December 31, 2007 (the first two quarters of which reflected no income), received a December 1, 2008 notice of eligibility, then a December 3, 2008 denial of eligibility. Thus, while the quoted EUC FAQs may have changed and are now outdated, they were in effect and relevant to Claimant's EUC claim.

sured employment or the equivalent in insured wages, as determined under the provisions of the state law implementing Section 202(a)(5) of the Federal–State Extended Unemployment Compensation Act of 1970.

*McKenna,* 981 A.2d at 417 (citing 26 U.S.C. § 3304 Note). Section 403–A(a) of the Law provides:

> (a) An individual shall be eligible to receive shareable regular benefits or extended benefits with respect to any week of unemployment in his eligibility period only if the Secretary of Labor and Industry finds that with respect to such week:
>
> (1) he is an "exhaustee" as defined in section 401–A(j);
>
> (2) he has satisfied the requirements of this act for the receipt or regular benefits that are applicable to individuals claiming shareable regular benefits and extended benefits, including not being subject to a disqualification for the receipt of benefits.

Section 403–A(i) of the Law further provides:

> (i) Notwithstanding subsection (a)(2) an individual shall not be eligible for extended benefits unless, in the base year with respect to which the individual exhausted all rights to regular benefits under the State law, the individual had wages equal to at least one and one-half (1 1/2) times the individual's highest quarterly wage.

Thus, in order for Claimant to qualify for EUC benefits, he must have had wages at least equal to one and one-half times his highest quarterly wage.[7]

According to the record, if the $74,738.20 ($72,254.34 paid in the third quarter, plus $2,483.86 paid in the fourth quarter) in relocation monies paid by Em-

ployer to Claimant is included in the calculation of Claimant's wages, his total wages were $109,699.75. Notes of Testimony, June 30, 2009 (N.T. 6/30/09), Ex. C–1. His highest quarterly wage was $89,908.19. N.T. 6/30/09 at Ex. C–1. One and one-half times $89,908.19 equals $134,862.28. Since the total wages of $109,699.75 were not at least $134,862.28, Claimant was, according to these calculations, ineligible for EUC benefits. If, however, the same calculation were made without the relocation monies, Claimant's total wages were $34,961.55. N.T. 6/30/09 at Ex. C–1. His highest quarterly wage then, was $17,653.85. N.T. 6/30/09 at 15. One and one-half times $17,653.85 equals $26,480.78. Since the total wage figure of $34,961.55 exceeds $26,480.78, Claimant would be eligible for EUC benefits based upon the latter calculations.

■ Claimant's eligibility for EUC benefits, therefore, hinges upon whether the relocation monies paid to Claimant by Employer during his base year were "wages" for purposes of determining his eligibility for EUC benefits. Section 4(x) of the Law defines "wages" as "all remuneration, [ ]including the cash value of mediums of payment other than cash ... paid by an employer to an individual with respect to his employment...." This figure includes:

> all remuneration for services with respect to which a tax is required to be paid under any Federal law imposing a tax against which credit may be taken for contributions to be paid into a state unemployment fund or which as a condition for full tax credit against the tax imposed by the Federal Unemployment Tax Act....

43 P.S. § 753(x)(6). Section 4(*l*)(1) of the Law, 43 P.S. § 753(*l*)(1), defines "employ-

---

7. Claimant met all other requirements.

ment" as "all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral...." "Remuneration" is not defined in the Law; however, for purposes of unemployment compensation eligibility, case law has defined it as "payment for services performed." *Dep't of Corr., State Corr. Inst. at Graterford v. Unemployment Comp. Bd. of Review,* 119 Pa.Cmwlth. 296, 547 A.2d 470, 472 (1988). While the term "service" is used repeatedly throughout Section 4 of the Law, nowhere is that term defined in the Law or in the UC Regulations, and case law provides little guidance in defining the term.

The UCBR based its October 1, 2009 opinion on the tax consequences of the relocation monies, simply stating that "[E]mployer reported [the relocation] reimbursements as taxable income and it withheld taxes.... [which was] consistent with IRS rules (See IRS Publication 521)." UCBR Op. at 4. The UCBR states for the first time in its brief that Internal Revenue Service (IRS) Publication 15, Circular E, Employers' Tax Guide (for use in 2009) (Publication 15) makes a distinction between "accountable" and "nonaccountable" moving expense reimbursement plans and, since Claimant's expenses were reimbursed as a part of a nonaccountable plan, they were properly deemed wages for purposes of Section 4(x)(6) and 403–A(i) of the Law. UCBR Br. at 8–11. The UCBR's opinion, however, made no reference whatsoever to "accountable" and "nonaccountable" moving expense reimbursement plans. Since the UCBR referred to IRS Publication 521, Moving Expenses (for use in preparing 2009 returns) in its decision, and Publication 521 also addresses "accountable" and "nonaccountable" moving expense reimbursement plans, we will examine that distinction here.

Both Publications 15 and 521 summarize from the employer and employee perspectives respectively, the distinction set forth in Section 1.62–2 of the Code of Federal Regulations, 26 C.F.R. § 1.62–2 (2010), between "accountable" plans and "nonaccountable" plans. UCBR Br. Appxs. B and C. Amounts paid by an employer to an employee under an accountable plan are not wages and are not subject to income tax withholding or payment of social security, Medicare and federal unemployment taxes. UCBR Br.App. B at 11, App. C at 9–10; 26 C.F.R. § 1.62–2(h) (2010). Amounts paid under nonaccountable plans are taxable and are subject to all employment taxes and withholding. UCBR Br. App. B at 11–12, App. C at 10–11; 26 C.F.R. § 1.62–2(h) (2010).

In order to qualify as an accountable plan, the following requirements must be met: (1) the amounts must be deductible business expenses incurred while performing services as an employee; (2) the employee must provide an adequate accounting of each expense within a reasonable time; and, (3) any monies in excess of the substantiated expenses must be returned within a reasonable time. UCBR Br.App. B at 11; UCBR Br.App. C at 9–10; 26 C.F.R. § 1.62–2(c)–(f) (2010).

According to the record, Employer, through Sirva Relocation, LLC, paid Claimant $72,254.34 to cover his relocation expenses, which gave him a net payment of $45,000.00. These monies were paid pursuant to the "Lump Sum Relocation Payment for Moving Expenses" policy, which stated:

> The employee will receive a one-time lump sum payment, at the beginning of his/her Relocation. This payment is to pay for relocation expenses incurred, to move the new employee to their new place of employment. Relocation expenses are expected to offset the lump

sum payment. Such expenses are expected to be incurred before, during and after the actual move takes place. The intent is to provide reimbursement for these expenses, at the beginning of the move process, to ensure the new employee doesn't go 'out of pocket' to cover move expenses to his/her new place of employment.

N.T. at Ex. C–1. This policy does not clarify whether Employer's moving expense plan is either accountable or nonaccountable. However, there is no question that the monies in question were paid to reimburse Claimant for relocation costs related to his employment. Moreover, Claimant testified that the monies paid to Claimant by Employer for relocation were insufficient to cover his move, so there was no excess to be returned to Employer. Notes of Testimony, December 24, 2008 (N.T. 12/24/08) at 8. There are no findings on the record to indicate whether the expenses were in fact deductible business expenses, or whether Claimant had to provide an accounting to Employer within a reasonable time. In addition, the IRS documents relied upon by the UCBR in this case are applicable for use in 2009, and are not specific to the year in which either the monies were paid (2007), or when they would have to be claimed (2008).

Based upon the lack of evidence of record on which to base a decision in this case, we remand it to the UCBR for a hearing to determine whether the monies paid by Employer to Claimant for relocation in 2007 were part of an accountable plan or a nonaccountable plan based upon applicable IRS rules, to recalculate the wages attributable to Claimant for purposes of EUC benefits on that basis, and to resolve this matter in a manner otherwise consistent with this Opinion.

*ORDER*

AND NOW, this 19th day of October, 2010, the October 1, 2009 order of the Unemployment Compensation Board of Review is vacated, and this case is remanded for a hearing to determine whether the monies paid by SPX Corporation to William J. Rock for relocation in 2007 were part of an accountable plan or a nonaccountable plan based upon applicable IRS rules, to recalculate the wages attributable to William J. Rock for purposes of EUC benefits on that basis, and to resolve this matter in a manner otherwise consistent with this Court's Opinion.

Jurisdiction relinquished.