IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Stewart, : 
            Petitioner : 
             : 
         v. : No. 348 C.D. 2015
           : Submitted: October 16, 2015
Unemployment Compensation : 
Board of Review, : 
           Respondent : 

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI       FILED: November 6, 2015

David Stewart (Claimant) petitions *pro se* for review of the order of the Unemployment Compensation Board of Review (Board) affirming the decision of the Unemployment Compensation Referee (Referee) finding that Claimant was discharged for willful misconduct thereby making him ineligible for unemployment compensation (UC) benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] Finding no error in the Board's decision, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) of the Law provides that, "[a]n employe shall be ineligible for compensation for any week … [i]n which his unemployment is due to his discharge … from work for willful misconduct connected with his work…."

Claimant was employed by Tworog Holding, LLC (Employer) as a full-time general manager. Employer had a vacation policy that provided that requests for vacation time had to be submitted two weeks in advance and be approved by management of which Claimant was aware.[2] On August 5, 2014, Claimant requested one week vacation leave from his direct supervisor and Employer's Regional Manager, Johnathan Shiffert. Claimant's request was denied due to operational needs and poor store performance. Mr. Shiffert tried to accommodate Claimant by suggesting that he would try to give him a Saturday and Monday off work to afford him a long weekend. Claimant was instructed to follow up with Mr. Shiffert as to when he wanted to take the time off.

The store where Claimant works is open from Monday through Saturday and Claimant's schedule rotates either Wednesday or Saturday for his second day off. During the discussion between Claimant and Mr. Shiffert, no dates were mentioned as to when Claimant was planning on taking time off work. Claimant never submitted a leave request.

On Friday, August 15, 2014, Mr. Shiffert contacted Claimant's store and became aware that Claimant was not present because he had taken a long weekend off work, and would be off work August 15, August 16 and August 18, 2014. Mr. Shiffert had not approved Claimant's time off. On August 20, 2014, Mr. Shiffert spoke with Claimant and Claimant informed him that there must have

---

[2] Per Employer's vacation policy, all vacations must be taken in one or two week increments, where one week is defined as five consecutive working days and two weeks is defined as ten consecutive working days.

been a miscommunication. Claimant was then discharged for taking unauthorized leave and insubordination.

Claimant filed for UC benefits, which were granted, finding that Employer did not meet its burden of proving Claimant's insubordination. Employer appealed.

Before the Referee, Claimant testified that he was aware of Employer's vacation policy, which was entered into evidence, and, as such, had approached Mr. Shiffert on August 5, 2014, to discuss submitting in writing his request to take a week off. He testified that:

> C: When I first spoke to Mr. Shiffert I told him that I was working a lot of hours, under a lot of stress, that I had been having some health issues. I wanted to see if it would be feasible to use a vacation week prior to the end of the month in an effort to kind of regroup, take the time off, you know to have some time with the kids as well as he had mentioned prior to them returning to school. He told me not to bother submitting it, that it would not be approved. However, that particular weekend, which would've been -- I don't have it right in front of me though, but not to take that particular weekend off but to take an extended. I asked him at that point specifically what day and if he was sure. That Saturday was my regular scheduled day off which was the 16th, and the 18th was my regular scheduled day off for the following week. So I did work Tuesday and Wednesday the 19th and 20th when I returned.

> CL: Now during that conversation when you mentioned the health problems to Mr. Shiffert did he mention your ability to exercise leave under FMLA at all?

> C: No.

3

CL:  Did you receive any correspondence at all after that from anyone at [Employer] regarding your ability to exercise FMLA leave?

C:  I did not.

CL:  Okay.  And just to clarify, after your conversation with Mr. Shiffert what days exactly did you understand Mr. Shiffert to have allowed you to take off?

C:  The 15th, 16th, and 18th.

*     *     *

CL:  Okay.  And you're saying that the 16th, Saturday, and the 18th, Monday were days you were scheduled to be off anyway?

C:  Correct.

CL:  So the only day in question was the 15th, Friday?

C:  Yes.

CL:  Okay.  And what was your understanding as to the nature of the leave on Friday since that was outside of your normal scheduled time off, was that to be vacation or sick or other?

C:  My understanding it would've been a personal day upon that conversation as Mr. Shiffert mentioned.  And he said he understood having a family, he's got one of his own.  We can't do this weekend but take the following days.  I asked him if he was sure.  At that point in time I did alter the schedules, posted them on my board, had all staff on hand for the day I was not going to be there.  And the copies were in the system which can be viewed by himself as well as [Employer] if I'm not mistaken.

4

(R. Item No. 9 at 23-24.) Claimant also testified that he made sure that the store was fully staffed during his absences, and that he had tried to contact Mr. Shiffert on that Friday, after hearing from a coworker that Mr. Shiffert had called the store, but Mr. Shiffert never responded.

Mr. Shiffert, on behalf of Employer, testified that Claimant was discharged for insubordination and violation of Employer's vacation policy after taking unapproved vacation days. Mr. Shiffert testified that after he denied Claimant's request to take a week of vacation, they discussed the possibility of Claimant getting a long weekend, specifically a Saturday and a Monday off; however, no actual date was discussed and Claimant never followed up. Furthermore, Mr. Shiffert testified that even if Claimant had submitted a request for vacation time in writing, it would not have been approved because it was Employer's standard operating procedure to not approve vacation time when a store is under-performing and that Claimant had never mentioned any health problems to him. Mr. Shiffert also testified that as general manager of that particular store, Claimant created the employee schedule on an online system, to which Mr. Shiffert had access. With regard to Mr. Shiffert's conversation with Claimant about why he took the days off without approval, Mr. Shiffert testified:

> EW: I was going to say there had been a history of miscommunications with [Claimant] and the previous Regional Manager. And so there was always misinterpreting, misunderstanding, you know, which I, you know, chalked up [to] nothing. But when we started talking I said why did you take first off Friday, the 15[th]? That's our second busiest day of the month, why in the world would you think it's okay to take that off? And he said well I just misunderstood, I thought you said I could

5

take a long weekend this weekend. And I said absolutely not, I said I told you that at some point to let me know when you wanted to and we could try to work within our schedule to take a Saturday and a Monday off to have a three day weekend with your family. So his reaction was okay, well, you know, sorry, you know, misunderstanding. And it was a lot bigger than that to us so that's when we decided to, you know, I informed him that his employment with us would be terminated.

R: I'm sorry, you said you told him at some point you could take or he could take a Friday, Saturday, and Monday?

EW: No, I never said a Friday.

R: Oh, what did you…

EW: Ever.

R: …say? What was it that…

EW: I told him that we could work out a Saturday and a Monday so that he could have a three day weekend, including Sunday. And that was back to the original conversation which there were never any dates. But the conversation was [to] let me know when you want to take a weekend and we'll work out to where a Saturday will be the day off for the first week and Monday will be your day off for the second week so that you could have three days to spend with your family.

(R. Item No. 9 at 12-13.)

The Referee reversed the Service Center's determination, finding that Employer established willful misconduct on Claimant's part and reasoning that

6

although testimony regarding the conversation between Claimant and Mr. Shiffert was conflicting, Claimant's testimony was incredible because as the store's general manager, Claimant was aware of the importance of being present at the store on the 15th of each month. The Referee also found Mr. Shiffert's testimony credible that no specific dates were mentioned when discussing Claimant taking a long weekend or that Claimant had cited health reasons for wanting to take leave.

Claimant appealed to the Board which affirmed the Referee's denial of benefits, finding that Employer established willful misconduct on Claimant's part. The Board found that Claimant's testimony that there was a miscommunication and that he believed he had prior approval to take the days off of work was incredible as Claimant took a Friday off of work when Mr. Shiffert had only previously discussed a Saturday and a Monday. The Board also found Mr. Shiffert's testimony credible that Claimant never raised any health issues. Claimant then requested reconsideration, which the Board denied. This appeal followed.[3]

On appeal, Claimant argues that the Board's finding of willful misconduct is not supported by substantial evidence.[4] The core of Claimant's

---

[3] Our scope of review of the Board's decision is limited to determining whether an error of law was committed, constitutional rights were violated, or whether the necessary findings of fact are supported by substantial evidence. *Rock v. Unemployment Compensation Board of Review*, 6 A.3d 646, 648 n.5 (Pa. Cmwlth. 2010).

[4] Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a finding of fact." *Seton Co. v. Unemployment Compensation Board of Review*, 663 A.2d 296, 299 n.3 (Pa. Cmwlth. 1995).

argument relies on Claimant's own testimony and version of the events, which the Board did not find to be credible. It is well settled that in unemployment compensation cases, the Board is the ultimate fact finder, and findings of fact made by the Board are conclusive on appeal as long as they are supported by substantial evidence. *Ryan v. Unemployment Compensation Board of Review*, 547 A.2d 1283 (Pa. Cmwlth. 1988). Where there is a conflict in testimony, credibility determinations and the resolution of evidentiary conflicts are within the Board's discretion and not subject to re-evaluation on judicial review. *Tapco, Inc. v. Unemployment Compensation Board of Review*, 650 A.2d 1106 (Pa. Cmwlth. 1994). The Board found Mr. Shiffert's testimony to be credible and resolved all conflicts in the evidence in favor of Employer, and we will not disturb these determinations on appeal.

The employer bears the burden of proving willful misconduct if the claimant has been discharged.[5] *Guthrie v. Unemployment Compensation Board of*

---

[5] Although willful misconduct is not defined in the Law, our Supreme Court has defined willful misconduct in the context of unemployment compensation as: (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452 (Pa. 1997). An employee's negligence constitutes willful misconduct only if it is of "such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." *Myers v. Unemployment Compensation Board of Review*, 625 A.2d 622, 625 (Pa. 1976) (quoting *Coleman v. Unemployment Compensation Board of Review*, 407 A.2d 130, 131-32 (Pa. Cmwlth. 1979)). However, an employer cannot demonstrate willful misconduct by "merely showing that an employee committed a negligent act, but instead must present evidence indicating that the conduct was of an intentional and deliberate nature." *Id.* (quoting *Bucher v. Unemployment Compensation Board of Review*, 463 A.2d 1241, 1243 (Pa. Cmwlth. 1983)).

**(Footnote continued on next page…)**

*Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999) (citing *Sacks v. Unemployment Compensation Board of Review*, 459 A.2d 461 (Pa. Cmwlth. 1983)). In willful misconduct cases involving violation of a work rule, the employer bears the burden of proving the existence of a reasonable work rule and the fact that the claimant violated the work rule. *Guthrie*, 738 A.2d at 521; *Brunson v. Unemployment Compensation Board of Review*, 570 A.2d 1096, 1098 (Pa. Cmwlth. 1990). Once these elements have been established, the burden then shifts to the claimant to prove he had good cause for his actions, meaning that his actions were justified or reasonable under the circumstances. *Guthrie*, 738 A.2d at 522 (citing *Frumento v.*

---

**(continued…)**

What is intentional or deliberate and amounts to willful misconduct requires a consideration of "all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." *Rebel v. Unemployment Compensation Board of Review*, 723 A.2d 156, 158 (Pa. 1998). Our Supreme Court further elaborated on this standard when it stated:

> It is notable that the standard we have articulated makes reference to the employer's interests, rules, and expectations, and emphasizes the totality of the circumstances. Implicit in this necessarily flexible approach to determining what constitutes willful misconduct on the part of an individual employee is a recognition of the myriad working conditions and work rules that apply throughout the Commonwealth. Thus, the conduct that rises to the level of willful misconduct may vary depending upon an individual employee's specific occupation or work situation. Beyond recognizing that the specific circumstances governing a particular occupation or workplace may be relevant both in defining reasonable employer expectations and in assessing what amounts to willful misconduct in failing to meet them….

*Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284, 288 (Pa. 2001).

*Unemployment Compensation Board of Review*, 351 A.2d 631, 634 (Pa. Cmwlth. 1976)).

Employer established the existence of a work rule, given Mr. Shiffert's testimony and the vacation policy that was entered into evidence. Claimant was aware of the policy, as evidenced by his testimony and the fact that he had had a discussion with Mr. Shiffert about requesting time off. The Board credited Mr. Shiffert's testimony that he never gave Claimant permission to take the days off. However, Claimant went ahead and took the days off regardless, thereby violating the policy. The burden then shifted to Claimant, who failed to establish good cause for his actions.

Claimant argues that he had good cause for his actions because he ensured that the store was fully staffed while he was away and he attempted to call Mr. Shiffert on that Friday and could not reach him. However, a claimant need not "show a specific detriment resulting from [his or her] infraction or [his or her] intent to defraud in order to establish willful misconduct. In many cases, it is not the specific harm to the employer that disqualifies [a claimant] from benefits but rather [his or her] abrogation of duties." *Rossi v. Unemployment Compensation Board of Review*, 676 A.2d 194, 198 (Pa. 1996). Moreover, regardless of Claimant's attempts to contact Mr. Shiffert, he had already taken off work without approval, thus violating the policy, and only attempted to contact Mr. Shiffert after hearing that Mr. Shiffert had called the store.

Accordingly, the order of the Board is affirmed.

_____
DAN PELLEGRINI, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Stewart,                           :
              Petitioner         :
                                   :
              v.                    : No. 348 C.D. 2015
                                   :
Unemployment Compensation                :
Board of Review,                         :
              Respondent        :

# **O R D E R**

AND NOW, this $\underline{6^{th}}$ day of <u>November</u>, 2015, the order of the Unemployment Compensation Board of Review, dated January 14, 2015, at No. B-574179, is affirmed.

_____
DAN PELLEGRINI, President Judge