IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin T. Quigley,                          :
               Petitioner                 :
                                          :
        v.                         : Nos. 1927 and 1928 C.D. 2015
                                   : Submitted:  April 8, 2016
Unemployment Compensation                  :
Board of Review,                           :
               Respondent                 :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI             FILED: May 2, 2016


        Kevin T. Quigley (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) imposing a fault overpayment under Section 804(a) of the Unemployment Compensation Law (Law)[1] because Claimant failed to report a severance agreement while receiving

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §874 (a).  Section 804(a) provides, in pertinent part:

> Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue….

unemployment compensation (UC) benefits. Finding no error in the Board's decision, we affirm.

## I.

In January 2014, as a result of his termination by the City of Pittsburgh (Employer) from his position as an Assistant Director of Public Works, Claimant applied for unemployment compensation online. When applying for benefits, Claimant was asked in a UC Service Center (Service Center)'s online questionnaire whether he was receiving a severance payment from Employer to which he answered in the negative. Severance payments are considered income.[2] For each week ending January 25, 2014, through March 1, 2014, Claimant received unemployment compensation benefits.

On March 13, 2014, Claimant signed a severance agreement with Employer under which he was to receive a total of $77,699.44 to be paid in monthly payments of $3,237.48 beginning on April 15, 2014. The severance agreement was dated April 30, 2014. From March 16, 2014, through July 19, 2014, Claimant continued to file online bi-weekly unemployment claims in which he would affirm that he was not receiving any earnings.

In February 2015, the Service Center sent Claimant a letter asking him to complete an enclosed questionnaire regarding his severance pay. Claimant did

---

[2] In *Hock v. Unemployment Compensation Board of Review*, 413 A.2d 444, 447 (Pa. Cmwlth. 1980), this Court reasoned that severance payments are in recognition of past services to an employer and are deemed remuneration.

not respond. The Service Center then left a voicemail message for Claimant requesting information to determine his eligibility for UC benefits. Again, Claimant did not respond.

Subsequently, the Service Center issued three determinations: 1) revising Claimant's weekly benefit allowance for the weeks ending January 11, 2014, through October 11, 2014, as $0.00 because he received severance payments; 2) imposing a nonfault overpayment of $3,378.00 for the weeks ending January 25, 2014, through March 1, 2014, under Section 804(b) of the Law;[3] and 3) establishing an $11,260.00 fault overpayment as required by Section 804(a) of the Law for the weeks ending March 8, 2014, through July 19, 2014. Claimant then filed an appeal.

## II.

## A.

Before the Referee, Claimant testified that he had not worked since his separation from Employer and when he applied for unemployment benefits, he was not receiving any severance payments from Employer, nor was there an

---

[3] *See* 43 P.S. §874(b). Section 804(b) states, in pertinent part:

> (1) Any person who other than by reason of his fault has received with respect to a benefit year any sum as compensation under this act to which he was not entitled shall not be liable to repay such sum but shall be liable to have such sum deducted from any future compensation payable to him with respect to such benefit year, or the three-year period immediately following such benefit year, in accordance with the provisions of this paragraph.

agreement that he would receive a severance. He acknowledged, however, that he began receiving monthly severance payments from Employer in the amount of $3,267.48 beginning on April 15, 2014.

While acknowledging that when he initially applied for benefits the online questionnaire asked whether or not he had received or was receiving severance pay, Claimant testified that he was not asked at any time after his initial application, including when he made his online bi-weekly claim, any question related to severance pay. Claimant stated that when filing his bi-weekly claim, he was asked whether he received any earnings. He did not know that he was required to report severance pay as income or that it would have an effect on his unemployment benefits.

The Referee found Claimant's statements that he did not know that his severance pay could impact his unemployment benefits meritless. However, the Referee agreed that Claimant did not know that he would be receiving a severance payment until he signed the agreement, thereby reasoning that the payment for the week ending March 8, 2014, was not Claimant's fault. The Referee explained that Claimant should have notified the Service Center that he signed a severance agreement, thus changing the payments from March 15, 2014 onward. As a result, the Referee found that Claimant's severance pay was income that was reportable under Section 404(d)(1) of the Law and, as such, his revised weekly benefit allowance was $0 for claim weeks ending January 11, 2014, through October 11,

2014. The Referee levied a fault overpayment under Section 404(d)(1) of the Law of $58,718.38[4] for 26 weeks[5] of the claim.[6]

## B.

Claimant then appealed to the Board contending that the Referee erred in finding a fault overpayment because he was not asked whether he was receiving severance payments after his initial application.[7] Claimant argued that the word "fault" as used in Section 804(a) of the Law requires conduct that intentionally misleads whereas Claimant's failure to report his severance pay two-and-a-half months after his initial application for UC benefits did not qualify as culpable conduct, especially given that Claimant had no special knowledge that he had to report after the fact.

---

[4] This value is calculated by "subtracting 40% of the average annual state wage from the total amount of severance paid or payable to the claimant." (R.R. at 18a.)

[5] The Referee explained that "[t]he number of attributable weeks immediately following the claimant's separation is determined by dividing the deductible severance pay by the regular full-time weekly wage of the claimant." (R.R. at 18a.)

[6] The Referee determined that pursuant to Section 804(b), a non-fault overpayment must be imposed in the amount of $3,941 for the seven weeks ending January 25, 2014, through March 8, 2014, and a fault overpayment must be imposed in the amount of $10,697 for the 19 weeks ending March 15, 2014, through July 19, 2014.

[7] Specifically, Claimant alleged that the Referee's Finding of Fact was incomplete because he was not asked whether he was receiving severance payments after his initial application. The Referee's Finding of Fact Number 13 states: "The [C]laimant did not inform the Service Center that he would be receiving severance after signing the agreement on March 13, 2014 or after receiving the first of the payments." (R.R. at 18a.)

Finding that the Service Center and Referee did not consider in their calculations the fact that Claimant's last day of work was a Tuesday, which meant that he would have worked another three days and earned $904.36 for the week ending January 11, 2014, the Board modified and affirmed the Referee's eligibility determination. After recalculating Claimant's attributable severance as $57,814.46, the Board found that Claimant's revised weekly benefit allowance was $0 for claim weeks ending January 18, 2014, through October 4, 2014, and a revised weekly benefit allowance of $34.43 for the week ending October 11, 2014.

Likewise, with regard to the Referee's overpayment determinations, the Board modified and affirmed. In making its determination, the Board specifically discredited Claimant's assertion that he was unaware that he was required to report his later receipt of severance because he also admitted that he answered a question about severance when applying for benefits. However, the Board noted that it did not conclude that Claimant intentionally misled the Service Center, but rather that it was Claimant's fault and not a Service Center error that resulted in his overpayment. The Board reasoned that Claimant was not at fault for receiving benefits through the week ending March 1, 2014, because he did not yet know that he would be receiving a severance package and, therefore, was unable to notify the Service Center. Unlike the Referee, the Board found Claimant to be at fault for the March 8, 2014 overpayment because he filed a claim for that week on March 16, 2014, after having already signed the severance agreement and having had the opportunity to notify the Service Center.

6

Claimant requested reconsideration, arguing again that he was not at fault because his intention was never to mislead, and that the Board never made findings specific to Claimant's state of mind and, thus, cannot support a finding of fault overpayment. The Board granted reconsideration to consider Claimant's argument.

The Board then issued a nearly identical determination as above, notably adding information about Claimant's state of mind through Findings of Fact Numbers 6[8] and 8.[9] The Board also struck its previous conclusion that Claimant did not intentionally mislead, and replaced it with, "[Claimant] knew he needed to report his severance, but continued to file claims for benefits even after receiving monthly severance payments without notifying the [Service Center.]" (R.R. at 14a.) Claimant appealed.

### III.

In this appeal,[10] Claimant argues that the Board's Finding of Fact Number 6 is erroneous insofar that it concludes that he knew his severance pay

---

[8] In the Board's earlier decision, Finding of Fact Number 6 stated, "[Claimant] did not notify the [Service Center] that he signed a severance agreement." (R. Item No. 14.) On reconsideration, the Board altered that finding of fact to state, "[Claimant] did not notify the [Service Center] that he signed a severance agreement *even though he knew it could affect his claim for benefits*." (R.R. at 12a) (emphasis added).

[9] Finding of Fact Number 8 states, "When filing his biweekly claim for benefits after starting to receive severance payments, [Claimant] affirmatively stated he was not receiving any earnings." (R.R. at 12a.)

[10] Our scope of review of the Board's decision is limited to determining whether an error of law was committed, constitutional rights were violated, or whether the necessary findings of **(Footnote continued on next page…)**

could affect his claim for benefits. Specifically, Claimant again argues that his failure to report his severance pay does not support the Board's conclusion that he was at fault for the overpayment because he had no knowledge of his duty to disclose his severance pay and, thus, his failure to report was not intentional.

Section 804(a) of the Law provides that if a person receives unemployment compensation benefits by reason of his fault, that person will be responsible for repaying the amount received in error plus interest. 43 P.S. §874(a). "The word 'fault' within the meaning of Section 804(a) of the Law connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches." *Amspacher v. Unemployment Compensation Board of Review*, 479 A.2d 688, 691 (Pa. Cmwlth. 1984). Conduct that is designed to improperly and intentionally mislead the unemployment compensation authorities is sufficient to establish a fault overpayment. *Greenawalt v. Unemployment Compensation Board of Review*, 543 A.2d 209, 211 (Pa. Cmwlth. 1988). For example, an intentional misstatement on an application for benefits can support a finding of fault under Section 804(a). *Matvey v. Unemployment Compensation Board of Review*, 531 A.2d 840, 844 (Pa. Cmwlth. 1987). In order to find fault, the Referee or Board must make some findings with regard to a claimant's state of mind. *Greenawalt*, 543 A.2d at 211.

---

**(continued…)**

fact are supported by substantial evidence. *Rock v. Unemployment Compensation Board of Review*, 6 A.3d 646, 648 n.5 (Pa. Cmwlth. 2010).

It is undisputed that Claimant entered into a severance agreement with Employer on March 13, 2014, and started receiving monthly payments of $3,237.48 starting on April 15, 2014. Claimant admits that when he initially applied for UC benefits, the Service Center asked whether he was receiving a severance payment from Employer. At the time, he truthfully answered "no" because he had not yet entered into his severance agreement. However, Claimant continued to file bi-weekly claims for benefits, for which he was asked each time whether he was receiving any earnings, and each time he answered in the negative even after entering into the severance agreement and starting to receive payments.

Nevertheless, Claimant argues that because he was unaware that his severance payments would have any impact on his UC benefits, he did not think to report the payments to the Service Center. Even if we ignore the Board's finding that he did not know that receiving a severance agreement could affect his benefits, Claimant continuously misstated on his bi-weekly claim applications that he was not receiving any income despite receiving severance payments. Given Claimant's inaccurate representations on his bi-weekly claims, to which he admitted, we agree with the Board that Claimant's overpayment for the weeks ending March 8, 2014, through July 19, 2014, were a result of his own fault and that he is subject to a fault overpayment for those weeks under Section 804(a) of the Law.

Accordingly, because Claimant failed to inform the Service Center of his severance payments, the orders of the Board are affirmed.

_____
DAN PELLEGRINI, Senior Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin T. Quigley,                          :
                    Petitioner             :
                                           :
            v.                             : Nos. 1927 and 1928 C.D. 2015
                                           :
Unemployment Compensation                  :
Board of Review,                           :
                    Respondent             :


**O R D E R**


AND NOW, this 2nd day of May, 2016, the orders of the Unemployment Compensation Board of Review, dated September 16, 2015, at Nos. B-579531-A and B-579532-A, are affirmed.


_____
DAN PELLEGRINI, Senior Judge