IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank James Capozzi, Sr., : 
          Petitioner :
           :
          v. : Nos. 2283, 2284, 2285 C.D. 2015
           : Submitted: December 9, 2016
Unemployment Compensation : 
Board of Review, :
          Respondent :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI            FILED: January 19, 2017


In these consolidated petitions for review, Frank James Capozzi, Sr. (Claimant) petitions *pro se* for review of the Unemployment Compensation Board of Review's (Board) orders[1] affirming the Unemployment Compensation Referee's (Referee) decisions finding that because he was self-employed and intentionally did not report earnings that: Claimant is ineligible for unemployment compensation (UC)[2] and emergency unemployment compensation (EUC)[3] benefits;

---

[1] By order dated March 1, 2015, this court granted Claimant's motions to consolidate his petitions for review of the Board's three underlying orders dated August 26, 2015.

[2] Section 402(h) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(h), provides that "[a]n
**(Footnote continued on next page…)**

imposing fault overpayments of UC benefits[4] and state extended benefits;[5] and imposing fraud overpayments of emergency EUC benefits[6] totaling $18,678.00. We affirm.

---

**(continued…)**

employe shall be ineligible for compensation for any week . . . [i]n which he is engaged in self-employment."

[3] Section 4001(b) of Title IV of the Supplemental Appropriations Act of 2008, Pub. Law 110–252, 122 Stat. 2323, § 4001(b), 26 U.S.C. § 3304 Note (EUC Act), states in relevant part that "[t]he State will make payments of [EUC benefits] to individuals who—(1) have exhausted all rights to regular compensation under the State law or under Federal law with respect to a benefit year . . . [or] (2) have no rights to regular compensation or extended compensation with respect to a week under such law or any other State unemployment compensation law or to compensation under any other Federal law. . . ."

[4] Section 4005 of the EUC Act provides, in pertinent part:

> (a) In General.—If an individual knowingly has made, or caused to be made by another, a false statement or representation of a material fact, or knowingly has failed, or caused another to fail, to disclose a material fact, and as a result of such a false statement or representation or of such nondisclosure such individual has received an amount of [EUC benefits] under this title to which such individual is not entitled, such individual—

> (1) shall be ineligible for further [EUC benefits] under this title. . . .

> (b) Repayment.—In the case of individuals who have received amounts of [EUC benefits] under this title to which they were not entitled, the State shall require such individuals to repay the amounts of such [EUC benefits] to the State agency, except that the State agency may waive such repayment if it determines that—

> (1) the payment of such [EUC benefits] was without fault on the part of any such individual; and

**(Footnote continued on next page…)**

**I.**

Following his separation from employment with Oxford Management Services, Claimant applied for regular UC benefits receiving $5,538.00 in regular UC benefits for claim weeks ending July 31, 2010, through January 22, 2011.

---

**(continued…)**

> (2) such repayment would be contrary to equity and good conscience.
>
> (c) Recovery by State Agency.—
>
> (1) In General.—The State agency may recover the amount to be repaid, or any part thereof, by deductions from any [EUC benefits] payable to such individual under this title or from any unemployment compensation [(UC)] payable to such individual....

[5] Section 804(a) of the Law, 43 P.S. § 874(a), states in relevant part that "[a]ny person who by reason of his fault has received any sum as compensation under this act to which he was not entitled shall be liable to repay … a sum equal to the amount received by him. . . ."

[6] Section 801(b) of the Law states, in relevant part:

> (b) Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment under this act or under an employment security law of any other state or of the Federal Government or of a foreign government, may be disqualified in addition to such week or weeks of improper payments for a penalty period of two weeks and for not more than one additional week for each such week of improper payment. . . . The penalty weeks herein provided for shall be imposed against any weeks with respect to which the claimant would otherwise be eligible for compensation, under the provisions of this act, which begin within the four year period following the end of the benefit year with respect to which the improper payment or payments occurred.

43 P.S. § 871(b).

When his regular UC benefits were exhausted, he then applied for EUC benefits, receiving $10,293.00 in those benefits for claim weeks ending January 29, 2011, through December 17, 2011. After exhausting his EUC benefits, Claimant applied for and received state extended benefits for the claim weeks ending December 24, 2011, through March 17, 2012, totaling $2,847.00.

During all claim weeks that he received UC, EUC and state extended benefits, Claimant continuously, repeatedly and affirmatively indicated that he was not self-employed or otherwise working and reported $0.00 in earnings. Claimant also submitted 13 weekly state extended benefit forms indicating that he did not receive earnings of any kind.

On June 12, 2014, more than two years after Claimant last received benefit payments, the Department of Labor and Industry's (Department's) Office of Integrity, Audits Division (Audits Division) issued a Complete UC Fraud Investigation Report regarding the Department's potential overpayment to Claimant. The investigation was prompted by an Attorney General's Office investigation of Claimant for insurance fraud, theft by deception and criminal conspiracy that revealed that Claimant may have been receiving benefits while working and/or self-employed under the name Hindi Beginnings, Inc. Bonnie Haas, the Audit and Investigation Specialist who issued the Fraud Investigation Report, found that:

> [T]he information received indicating [Claimant] may have filed for and received UC benefits while working and/or [self-employed] appeared accurate. Based on my findings detailed in the body of this report, it appears

4

immediately following [Claimant's] separation on July 22, 2010[,] from Oxford Management, [Claimant] created Hindi Beginnings Inc. [Claimant] told me via telephone that he essentially listed all areas he . . . had experience in, with hopes of making money. . . . Review of Hindi Beginnings and [Claimant's] personal bank records revealed [Claimant] played a significant role in Hindi Beginnings. Based on same and follow-ups . . . it appears [Claimant] entered into [self-employment], removing himself from the labor market to pursue his business activity. Moreover, the records obtained verified [Claimant] made a substantial investment into his business both in time and money. Accordingly, there is a potential overpayment of $18,678 beginning [compensable week ending] July 31, 2010 due to self-employment.

(Record (R.) Item No. 4, UC Fraud Investigation Reports, dated 6/12/2014.)

On June 20, 2014, the Scranton UC Service Center (Service Center) issued three separate notices of determination finding Claimant ineligible for UC, EUC and state extended benefits and assessing fault overpayments for his UC and state extended benefit claims and fraud overpayments for his EUC claim. Claimant appealed and, before the Referee, although Claimant cross-examined the Department's witnesses,[7] he did not present testimony of his own.[8]

---

[7] In addition to the testimony of Bonnie Haas, the Department also presented the testimony of Kimberly Richmond who authenticated several documents that were later entered into the record.

[8] We note though that when the Department initiates proceedings that result in a suspension of benefits because of self-employment, it carries the burden. *See McKean v. Unemployment Compensation Board of Review*, 94 A.3d 1110, 1112 (Pa. Cmwlth. 2014).

5

To satisfy its burden, the Department presented the testimony of Bonnie Haas (Haas), the author of the Fraud Investigation Report, who testified that after Claimant's separation from employment with Oxford Management, on July 27, 2010, he prepared and filed all paperwork with the Pennsylvania Department of State to incorporate Hindi Beginnings Inc. (Hindi) and payed a $195.00 fee from his personal account. Claimant also signed the majority of Hindi's PA Form UC-2, Employer's Report for Unemployment Compensation, which reported $0.00 in earnings for the business. Although Krisandra Strausser is listed as sole owner of Hindi in these incorporation documents and Claimant is listed as Hindi's Vice President, Secretary and Chief Financial Officer, Hindi's bank account records at Wells Fargo list Claimant as an "owner" of Hindi and Claimant is the only person named on Hindi's bank account at Bank of America. Notably, Claimant established both of Hindi's bank accounts and signed checks on behalf of Hindi. He created Hindi's official website, submitted various applications for establishing its credit and business investments, and signed Hindi's checks to pay labor costs. Checks were issued from Hindi's bank account to cover rent costs for Claimant's joint residence with Krisandra Strausser.[9]

Haas further testified that the documentation and testimony she obtained during her investigation demonstrated that Claimant made substantial earnings while he was receiving UC, EUC and state extended benefits during the claim weeks ending July 31, 2010, through March 17, 2012. Claimant admits that he called the Department's amnesty hotline on August 30, 2013, to report that he

---

[9] According to Claimant's brief, Krisandra Strausser was Claimant's fiancée.

6

actually earned $600.00 per week from Hindi from January 1, 2011, through April 1, 2011. A 1099-form was also submitted to the Department indicating that he earned $8,999.00 for the 2011 tax year. Claimant admitted to Haas that he performed auto repairs and snow removal for Hindi. After conducting her investigation, Haas verified that Claimant entered into a contract with the City of Nanticoke in 2011/2012 for snow removal and that he earned $350.00 in this capacity. Several phone calls to different individuals revealed that Claimant did automotive repairs for cash payments. Claimant also made various purchases at auto part stores that appeared to be related to automotive repair.

The Referee issued three orders affirming the Service Center's determination. As pertinent, the Referee determined that Claimant was ineligible for benefits because he was self-employed, finding:

> [1.] The claimant had an investment in the business/corporation Hindi Beginnings Inc.
>
> [2.] The claimant was at risk of sustaining a profit or loss.
>
> [3.] The claimant was free from the direction and control of others in performance of his corporate duties with Hindi Beginnings Inc.
>
> [4.] The claimant is customarily engaged in an independently established trade, occupation, profession or business.[10]

---

[10] R. Item No. 12, Referee's Decisions/Orders, dated 8/18/2014 (Ineligible w/ Fraud and Fault Overpayments).

The Referee imposed fault and fraud overpayments because Claimant: falsified his application for unemployment compensation benefits and/or deliberately withheld material information in order to obtain regular UC benefits; deliberately omitted material facts and/or provided false information to the Service Center for the period of time in which he was receiving EUC benefits; and failed to inform the Service Center that he was engaged in self-employment and received earnings for work while receiving state extended benefits. Claimant appealed to the Board.

The Board issued three separate orders affirming the Referee's determinations relating to Claimant's ineligibility for benefits and adopting and incorporating all of the Referee's findings and conclusions. However, notwithstanding the adoption of the Referee's findings and conclusions, and without providing any further analysis or explanation, the Board modified the Referee's determination of fault and fraud overpayments to non-fault and non-fraud overpayments.

The Department then filed a request for reconsideration, explaining in pertinent part:

> As detailed in the Referee's decision, Claimant withheld information from the Department regarding his self-employment and earnings in order to obtain unemployment compensation benefits. He organized and played a substantial role in the operation of [Hindi], in addition to providing auto repair and computer services to the company, beginning just after he was separated from employment. He was an officer of the company, signed its checks, established credit with its suppliers, and opened bank accounts in its name. He also failed to report his work as a provider of snow plowing services to

8

the City of Nanticoke, and earnings he received from Hindi and the City of Nanticoke. Claimant affirmatively indicated he was not self-employed and was not receiving payments at times when he was so working and being paid. In addition, he even admitted to the Department's witness that he falsified information regarding his work and receipt of payments in 2011.

\* \* \*

The evidence submitted by the Department all points to Claimant knowingly providing false information in order to obtain benefits. In addition, his failure to testify to defend himself should corroborate the Department's evidence and erase the equivocal nature of any evidence regarding whether he knowingly provided false information in order to obtain UC benefits as stated above in *Commonwealth v. $23,300.00 U.S. Currency*[, 733 A.2d 693, 697-98 (Pa. Cmwlth. 1999)].

(R. Item No. 17 Department's Request for Reconsideration, dated 10/23/2014). The Board granted the Department's request, vacating the orders and inviting the parties to submit briefs.[11]

After briefs were submitted, the Board affirmed the Referee's decisions, including the Referee's assessments of fault and fraud overpayments. In doing so, the Board, once again, adopted the Referee's findings and conclusions in their entirety. Claimant then filed these petitions for review.[12]

---

[11] Claimant retained an attorney at this point for the purpose of submitting a brief to the Board on his behalf. However, Claimant now petitions *pro se* for review.

[12] Our scope of review of the Board's decision is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether the necessary **(Footnote continued on next page…)**

9

# II.

## A.

On appeal,[13] Claimant initially contends that the Board abused its discretion by granting the Department's motion for reconsideration because it lacked good cause to do so because the Department was not alleging new evidence or changed circumstance but rather the sole purpose was for reconsidering credibility issues pertaining to Claimant's refusal to testify at the Referee's hearing.

Regarding reconsideration, the Board's regulations provide:

> (a) Within 15 days after the issuance of the decision of the Board, as may be determined by the provisions of § 101.102 (relating to form and filing of application for further appeal from decision of referee), any aggrieved party may request the Board to reconsider its decision and if allowed, to grant further the opportunity to do the following:

_____

**(continued…)**

findings of fact are supported by substantial evidence. *Rock v. Unemployment Compensation Board of Review*, 6 A.3d 646, 648 n.5 (Pa. Cmwlth. 2010).

[13] At the outset, Claimant contends that the Board violated his due process rights because the Board failed to mail a copy of its August 26, 2015 orders to his then-attorney, which caused him to file his petition for review late because he was incarcerated at the time. Although the Board concedes that Claimant's petitions for review were filed late as a result of this error, the Board notes in its brief that it has not, and will not, file a motion to dismiss Claimant's petitions for review. Moreover, a *nunc pro tunc* appeal may be allowed where there has been a breakdown in the administrative process, *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130, 1131 (Pa. 1996), such as the Board's admitted failure to timely mail copies of the orders to Claimant's then-attorney.

(1) Offer additional evidence at another hearing.

(2) Submit written or oral argument.

(3) Request the Board to reconsider the previously established record of evidence.

(b) The requests will be granted **only for good cause in the interest of justice without prejudice to any party**. The parties will be notified of the ruling of the Board on each such request. The request for reconsideration and the ruling of the Board shall be made a part of the record and subject to review in connection with any further appeal to the Commonwealth Court.

34 Pa. Code § 101.111 (emphasis added). "In determining whether 'good cause' exists, the [Board] must consider whether the party requesting reconsideration has presented new evidence or changed circumstances **or whether** [the Board] **failed to consider relevant law**." *Laster v. Unemployment Compensation Board of Review*, 80 A.3d 831, 834 (Pa. Cmwlth. 2013) (quoting *Ensle v. Unemployment Compensation Board of Review,* 740 A.2d 775, 779 (Pa. Cmwlth. 1999)) (emphasis added).

Contrary to Claimant's contention, the Board had good cause to reconsider whether, as a matter of law, it was required to affirm the Department's imposition of fault and fraud overpayments. While Claimant's lack of testimony was asserted in the Department's motion for reconsideration, this was only set forth for the purpose of establishing a negative inference when determining his intent. *See Commonwealth v. $23,300.00 U.S. Currency*, 733 A.2d 693, 697-98 (Pa. Cmwlth. 1999). The Department's motion specifically stated that it was not seeking reconsideration of credibility determinations "[b]ecause the only testimony

11

presented was that of the Commonwealth, there was no credibility determination to be made." (R. at Item No. 17 Department's Request for Reconsideration, dated 10/23/2014) (citing *Petrone v. Unemployment Compensation Board of Review*, 557 A.2d 1118 (Pa. Cmwlth. 1989)).

As the Board explained in its modified orders, the Department "requested reconsideration, asserting that a fault overpayment was appropriate considering the Referee's findings that the claimant had knowingly provided false information in order to obtain benefits. . . . [T]he Board granted reconsideration . . . for the purpose of considering the Department's arguments." (R. Item No. 24, Board's Orders, dated 8/26/2015 (Ineligible w/ Fault and Fraud Overpayments).)

**B.**

Claimant next contends that the Board erred when determining that he was ineligible for benefits because he was self-employed since the evidence does not establish that he owned stock in or had control over Hindi or purchased equipment for Hindi. Because the term "self-employment" is not defined in the Law, we look to the definition of "employment" in Section 4(*l*)(2)(B) of the Law:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B). In order for an individual to be deemed "self-employed," both prongs of Section 4(*l*)(2)(B) of the Law must be satisfied. *Silver v. Unemployment Compensation Board of Review*, 34 A.3d 893, 896 (Pa. Cmwlth. 2011).

Notably, Claimant does not dispute that the Board found Hindi was incorporated by Claimant when he began receiving benefits; that he was Hindi's Vice-President, Secretary and CFO; that he signed checks on behalf of Hindi; that he was listed as the corporation's "owner" for one of its bank accounts; or that he received unreported earnings from Hindi and other sources while he was receiving benefits. All of this establishes that Claimant had an investment in Hindi, was at risk of sustaining a profit or loss, was free from the direction and control of others in performance of his corporate duties with Hindi and was customarily engaged in an independently established trade, occupation, profession or business. This is more than substantial evidence to support the Board's determination that Claimant was ineligible for UC, EUC and state extended benefits because he was self-employed.

## C.

Finally, Claimant contends that the Board erred when imposing fault and fraud overpayments. Section 804(a) of the Law provides that "[a]ny person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay . . . a sum equal to the amount so received by him. . . ." 43 P.S. § 874(a). Section 4005 of the EUC Act provides that an overpayment of EUC benefits shall be classified as fraud where an individual

"knowingly has failed . . . to disclose a material fact, and as a result of such . . . nondisclosure such individual has received an amount of emergency unemployment compensation under this title to which such individual was not entitled."

The word "fault" within the meaning of Section 804(a) connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches. *Fugh v. Unemployment Compensation Board of Review* ___ A.3d ___ (filed January 18, 2017); *Summers v. Unemployment Compensation Board of Review,* 430 A.2d 1046, 1048 (Pa. Cmwlth. 1981). To find fault, the Board must make some findings with regard to claimant's state of mind. *Maiorana v. Unemployment Compensation Board of Review*, 453 A.2d 747, 749 (Pa. Cmwlth. 1982). Conduct that is designed intentionally to mislead the UC authorities is sufficient to establish a fault overpayment. *Greenawalt v. Unemployment Compensation Board of Review*, 543 A.2d 209, 211 (Pa. Cmwlth. 1988). Where a claimant fails to provide truthful information to the Service Center, *Amspacher v. Unemployment Compensation Board of Review,* 479 A.2d 688, 692 (Pa. Cmwlth. 1984), or provides an intentional misstatement on an application for benefits, the imposition of a fault overpayment is appropriate. *Matvey v. Unemployment Compensation Board of Review,* 531 A.2d 840, 844 (Pa. Cmwlth. 1987).

Claimant contends that the evidence and testimony presented failed to establish that he knowingly and/or intentionally failed to disclose his earnings to the Department because he attempted to correct his reported earnings to the Department, undermining any finding that he held the requisite level of intent to

assign fault and fraud overpayments. What this argument ignores is that the Board chose to discredit Claimant's assertion that he attempted to correct his reported earnings given his continued and repeated inaccuracies and omissions were knowing or intentional and there is ample record evidence to support its determination in this regard. On numerous occasions, Claimant indicated on his UC, EUC and weekly state extended benefits forms that he was not working or receiving earnings of any kind when he was, in fact, receiving such work and earnings from Hindi. Moreover, he had been specifically advised on each occasion that the failure to report all work and earnings could result in prosecution. Such an extended course of conduct clearly supports the Board's determinations regarding Claimant's state of mind.

Accordingly, the Board's orders are affirmed.[14]

_____
DAN PELLEGRINI, Senior Judge

---

[14] Included in Claimant's brief is a letter to Claimant dated November 11, 2015, from Claimant's former-counsel, a four-page excerpt from a transcript in criminal court, and two pages taken out of an investigative report by the Office of Attorney General regarding Claimant. On August 3, 2016, the Board filed an Application for Relief in the Form of a Motion to Strike Extra-Record Evidence Attached to Claimant's Brief. By Order dated August 16, 2016, this Court directed that the motion be submitted with the merits. Because the three documents attached to Claimant's brief are not part of the record made before the Board, we strike those portions of Claimant's brief.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank James Capozzi, Sr.,       :
                Petitioner     :
                        :
          v.           : Nos. 2283, 2284, 2285 C.D. 2015
                        :
Unemployment Compensation  :
Board of Review,          :
                Respondent  :

## **O R D E R**

AND NOW, this 19th day of January, 2017, it is hereby ordered that the orders of the Unemployment Compensation Board of Review dated August 26, 2015, are affirmed, and the Unemployment Compensation Board of Review's Application for Relief in the Form of a Motion to Strike Extra-Record Evidence Attached to Petitioner's Brief is granted.

_____
DAN PELLEGRINI, Senior Judge